THE STATE OF OHIO, APPELLANT, *v.* SMORGALA, APPELLEE.

[Cite as State *v.* Smorgala (1990), 50 Ohio St. 3d 222.]

(No. 89-44—Submitted January 17, 1990—Decided April 25, 1990.)

*Jay B. Grunda*, city prosecutor, and *Michael E. Szekely*, for appellant.

*Rothgery & Associates*, *Kenneth P. Rothgery* and *Christopher R. Rothgery*, for appellee.

HARSHA, J. The question presented for review by this certification is whether the courts of Ohio should judicially create a public policy limitation upon the statutorily created physician-patient privilege which would allow otherwise clearly inadmissible evidence to be received in "drunk driving" cases. In keeping with the constitutional principle of separation of powers, we cannot adopt such a position. Judicial policy preferences may not be used to override valid legislative enactments, for the General Assembly should be the final arbiter of public policy.

R.C. 2317.02(B) stated as follows:

"The following persons shall not testify in certain respects:

"* * *

"(B) A physician concerning a communication made to him by his patient in that relation or his advice to his patient, except that the physician may testify by express consent of the patient or, if the patient is deceased, by the express consent of the surviving spouse or the executor or administrator of the estate of the deceased patient and except that, if the patient voluntarily testifies or is deemed by section 2151.421 of the Revised Code to have waived any testimonial privilege under this division, the physician may be compelled to testify on the same subject* * *." (Am. Sub. H.B. No. 529, 141 Ohio Laws, Part II, 4865, 4871-4872.)

The waiver established by R.C. 2151.421 dealt with injuries, abuse, or neglect involving juveniles. R.C. 2317.02(B) further provided that the filing of a medical claim constituted a waiver of the privilege with regard to the care and treatment related to the claim.

Where the words of a statute are free of ambiguity and express plainly and distinctly the sense of the lawmaking body, the courts should look no further in their efforts to interpret the intent of the General Assembly. Here it is clear that the legislature has stated that the privilege is to be given effect absent specific statutory exceptions, none of which applies to this case.[1]

Appellant urges this court to append a judicial public policy limitation upon the statutorily created privilege. In doing so, appellant contends that the public interest in the effective prosecution of drunk driving cases outweighs any public considerations which support the uninhibited flow of information between doctor and patient. In support of this contention, appellant cites *State* v. *Dress* (1982), 10 Ohio App. 3d 258, 10 OBR 372, 461 N.E. 2d

---

[1] There is no issue before the court concerning whether the term "communication" as used in R.C. 2317.02(B) includes physical observations, examinations or results and records thereof. In addition to the fact that the issue was not briefed by appellant, prior case law is consistent in interpreting that term to include physical observations and examinations. *State* v. *Dress*, *supra*, citing *Baker* v. *Indus. Comm.* (1939), 135 Ohio St. 491, 14 O.O. 392, 21 N.E. 2d 593. This rule of law was codified by recent amendment of R.C. 2317.02(B), although the amendment did not apply at the time of the blood test. (Am. Sub. H.B. No. 1, 142 Ohio Laws, Part I, 1661, 1692-1693.)

1312; *State* v. *Tu* (1984), 17 Ohio App. 3d 159, 17 OBR 291, 478 N.E. 2d 830; *State* v. *Kavlich* (1986), 33 Ohio App. 3d 240, 515 N.E. 2d 652; and *State* v. *Boysaw* (1987), 40 Ohio App. 3d 173, 532 N.E. 2d 154, all of which rely on the balancing test set forth by this court in *State* v. *Antill* (1964), 176 Ohio St. 61, 26 O.O. 2d 366, 197 N.E. 2d 548.

As the court of appeals so aptly pointed out in its decision below, the rationale in *Antill* has been misapplied to an inapposite set of circumstances. In *Antill,* the court was faced with two conflicting *legislatively* created policies in the context of domestic violence. Homer Antill was involved in a violent argument with his wife, Ester Antill. During the argument, she suffered cuts, bruises and a puncture wound to the chest. Mr. Antill was indicted and the physician who treated Mrs. Antill was called to testify about her wounds at trial. At issue was the conflict between the physician-patient privilege set forth in R.C. 2317.02 and the statutory duty, then found in R.C. 2317.44 (see present R.C. 2921.22), of physicians to report to the police the treatment of victims suffering from wounds inflicted by a deadly weapon. Given those facts, this court held that the physician's testimony was admissible, notwithstanding the privilege, since the purpose of the privilege to avoid publicity was no longer attainable.

Where two legislative enactments are in apparent conflict, our constitutional role under Section 1, Article IV is to interpret the intent of the General Assembly. This judicial function differs from the judicial function urged for us by the appellant and which the appellate courts in *State* v. *Dress, supra,* and cases following *Dress,* have adopted. In *Dress* and the cases adopting its position, the appellate courts attempt to balance a legislative policy establishing the privilege with a judicial policy limiting its application. The concurring opinion by Judge Markus in *State* v. *Kavlich, supra,* at 246, 515 N.E. 2d at 657-658, succinctly points out the impropriety and danger in that approach:

"Those decisions suggest that courts can decide which statutes must yield to judicially perceived public policy. However, the legislature is the final arbiter of public policy, unless its acts contravene the state or federal Constitutions. The Ohio Constitution vests the legislative power to resolve policy issues in the General Assembly. Section 1, Article II, Ohio Constitution. If courts could decide that the public policy which favors convictions in meritorious drunken driving cases overrides this statutory privilege, it could effectively repeal the statute.

"Certainly, the public policy favoring convictions for even graver crimes would equally justify a decision to disregard this privilege. If the statutory physician-patient privilege is subject to judicial policy preferences, the statutory attorney-client privilege may be similarly vulnerable. If judicial policy preferences override this statute in criminal cases, there is no assurance that they cannot override it in civil cases. In other words, courts should not forget that the legislature's valid laws control policy preferences."

In an effort to bolster its public policy argument, the appellant argues that the appellate court's decision below allows an abuse of the privilege that would impede enforcement of drunk driving laws. We note that in this case, the state failed to take advantage of the tools which the legislature has provided to combat the serious problem of drunk driving. No police officer requested a separate test as authorized by R.C. 4511.191(A),

which states that one who drives on Ohio's public highways is deemed to consent to such a test. While we are aware that a suspected drunk driver has a right to refuse the test under R.C. 4511.191(D), that subsection also provides for an automatic one-year suspension of driving privileges by the Registrar of Motor Vehicles upon receipt of a sworn report from the officer. Furthermore, R.C. 4511.191(B) provides that if the suspected driver is dead, unconscious, or otherwise in a condition rendering the driver incapable of refusal, the consent established by R.C. 4511.191(A) is deemed not to have been withdrawn and the test may be given. Before the state raises the spectre of being disarmed by judicial fiat in its war against drunk drivers, it should use the tools supplied by the General Assembly.

While the issue was not raised by the state or any of the appellate decisions which it cites, we have considered the Rules of Evidence and this court's rulemaking authority under Section 5(B), Article IV of the Ohio Constitution as possible means to obtain the result desired by appellant. Under this rulemaking authority, the court prescribes "rules governing practice and procedure in all courts of the state, which rules shall not abridge, enlarge, or modify any substantive right." If the admission of evidence, *i.e.,* the hospital-ordered blood test, is a purely procedural matter, the court would arguably be free to pronounce an appropriate rule without usurping a legislative function. A review of Evid. R. 501 dispels any hope that such an approach will be helpful. Evid. R. 501 reads in its entirety:

"The privilege of a witness, person, state or political subdivision thereof shall be governed by statute enacted by the General Assembly or by principles of common law as interpreted by the courts of this state in light of reason and experience."

The rule clearly states that the matter of privilege is controlled by statute or common law. This rule removes the matter of privileges from the operation of the Rules of Evidence. See Staff Note (1980), Evid. R. 501.

The rule adopts the same approach to privilege as is found in Fed. Evid. R. 501. The United States Supreme Court originally proposed thirteen specific rules of privilege, but Congress deleted them all, substituting a general provision which left the law of privilege unchanged. This court followed the congressional approach because it believed the law of privilege could be considered substantive and therefore beyond the court's constitutional rulemaking authority. See Giannelli, Ohio Evidence Manual (1982), Section 501.01, and the authority cited therein. The Staff Note to Evid. R. 501 echoes a similar concern over the substantive nature of the law of privilege. The note states that by adopting by reference privilege statutes and common-law constructions, the direct confrontation of questions of what is procedural and what is substantive was avoided.

Because the law of privilege has been determined to be substantive in nature, this court is not free to propose an amendment to the Rules of Evidence which would deny the privilege in drunk driving cases. Likewise, since the legislature has enacted a specific statutory provision in R.C. 2317.02(B) to establish and control the physician-patient privilege, there is no vacuum within which we can proceed by common-law pronouncement.

Accordingly, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., SWEENEY, HOLMES, DOUGLAS, WRIGHT and H. BROWN, JJ., concur.

WILLIAM H. HARSHA, J., of the Fourth Appellate District, sitting for RESNICK, J.