Please note: This case has sua sponte been removed from the accelerated calendar.
 DECISION
On December 5, 1998, defendant-appellant Randal Slageter attempted to pass traffic by using the right side of the road. As he moved to the right, he hit a parked car with his motorcycle. Upon impact, he was thrown from his motorcycle and landed on the roadway. Slageter suffered serious injuries to his head and neck, and was taken to a nearby hospital. Several people witnessed the accident.
Corporal Butler, an expert in accident investigation and reconstruction for the sheriff's department, arrived at the scene shortly before Slageter was transported to the hospital. Corporal Butler testified that he investigated the accident, obtained witness statements, took photographs of the accident, and spoke with the witnesses and paramedics. But Corporal Butler was unable to speak with Slageter at the scene because the paramedics were treating him. Corporal Butler testified that, after speaking with everyone at the scene, he had no indication that Slageter had consumed alcohol on the evening of the accident.
Upon completing his investigation at the accident site, Corporal Butler went to the hospital, where he arrived less than two hours after the accident. Though Slageter was conscious, Corporal Butler was only able to speak with him for about thirty to forty-five seconds because he was just about to undergo a CAT scan. In that brief time, Corporal Butler was able to verify some general information relating to registration of the motorcycle and who was operating it when the accident occurred. Corporal Butler stated that he did not smell any alcohol on Slageter, and he did not ask the hospital to administer a blood-alcohol test. In essence, Corporal Butler testified that he did not possess any indication from anyone that Slageter had been drinking alcohol. Based on this investigation, Corporal Butler charged Slageter with failure to maintain an assured clear distance in violation of R.C.4511.21(A).
Several days later, one of the witnesses voiced a complaint with the sheriff's department and the Cincinnati Enquirer, a local newspaper. The witness questioned why Slageter, a Cincinnati firefighter, was not charged with driving under the influence (DUI). Based on this complaint, the sheriff's department reopened the investigation and requested a release of Slageter's medical records pursuant to R.C. 2317.02(B)(2). The medical records revealed that Slageter had a blood-alcohol content of .352. As a result, Slageter was charged with operating a motor vehicle under the influence of alcohol in violation of R.C.4511.19(A)(1) and operating a motor vehicle with a concentration of ten-hundredths of one percent or more by weight of alcohol in his blood, in violation of R.C. 4511.19(A)(2).
Slageter filed a motion to suppress any test relating to his coordination, sobriety and alcohol or drug level, including the blood-alcohol test administered by the treating hospital; statements made by him; and observations or opinions of the police officers who stopped, arrested, or tested him. Following a hearing, the trial court denied Slageter's motion to suppress. Thereafter, Slageter entered a no-contest plea on the (A)(2) charge.[1] The trial court found Slageter guilty of violating R.C. 4511.19(A)(2), and he was sentenced.[2] Slageter appeals his conviction, alleging that the trial court erred in overruling his motion to suppress.
When reviewing a ruling on a motion to suppress, we are mindful that the trial court assumes the role or trier of fact at the suppression hearing.[3] But, in accepting its properly supported findings of fact as true, we independently determine as a matter of law whether they meet the applicable legal standard.[4] The sole issue presented in this appeal is whether Slageter's due process rights were violated when the trial court failed to suppress his medical records, particularly his blood-alcohol test, obtained by the sheriff's department pursuant to R.C. 2317.02(B)(2).
R.C. 2317.02 relates to privileged communications, including those covered by the physician-patient privilege. For years, Ohio case law had carved out a public-policy exception to the physician-patient privilege, holding that the public interest in DUI prosecutions outweighed a claim of privilege relating to blood-alcohol tests administered by a physician.[5] The Ohio Supreme Court ended this judicial policy in State v. Smorgola,[6]
holding that a court may not override a legislatively created privilege by enacting judicial policy in DUI cases. In response to State v. Smorgala, the legislature, in 1993, affirmatively removed the physician-patient privilege for blood, breath, or urine tests involved in pending criminal prosecutions.[7] The clear intent of the legislature was to carve out an exception to the physician-patient privilege, giving law enforcement officers the ability in criminal cases to obtain blood-alcohol tests from treating physicians.[8]
R.C. 2317.02 now provides the following relating to who may testify:
The following persons shall not testify in certain respects:
 (B)(1) A physician or a dentist concerning a communication made by a patient in that relation or the physician's or dentist's advice to a patient, except as otherwise provided in this division, division (B)(2), and division (B)(3) of this section, and except that, if the patient is deemed by section 2151.421
[2151.42.1] of the Revised Code to have waived any testimonial privilege under this division, the physician may be compelled to testify on the same subject.
 The testimonial privilege under this division does not apply, and a physician or dentist may testify or may be compelled to testify in any of the following circumstances:
* * *
 (b) In any criminal action concerning any test or the results of any test that determines the presence or concentration of alcohol, a drug of abuse, or alcohol and a drug of abuse in the patient's blood, breath, urine, or other bodily substance at any time relevant to the criminal offense in question.[9]
R.C. 2317.02(B)(2)(a) provides enforcement officers with a process by which they may request and receive the medical records taken by a health-care provider.
The issue from Slageter's perspective, however, is whether the privilege outlined in R.C. 2317.02(B)(1)(b) should have applied in this case, because his blood-alcohol test was obtained in violation of the consent provisions in R.C. 4511.191. R.C. 4511.191, Ohio's implied-consent statute, contemplates an arrest for driving under the influence of alcohol and a request for testing by a police officer who has reasonable grounds to believe that the accused has been operating a vehicle on a highway or any public or private property used by the public while under the influence of alcohol.[10] One who is dead, unconscious, or otherwise incapable of rendering consent is deemed to have withdrawn his consent.[11]
It is undisputed that Slageter was not under arrest at the time his blood-alcohol test was taken at the hospital. Moreover, the test was not taken for police use or at the request of the investigating officer. The record reveals that the test was performed on the date of the accident by the attending hospital for medical purposes. Corporal Butler testified that, following his investigation, he did not believe that Slageter was driving his motorcycle under the influence of alcohol on the day of the accident. Rather, Corporal Butler related that he did not suspect that this was an alcohol-related accident until several days later, when an eyewitness voiced a complaint. Accordingly, we conclude that R.C. 4511.191 is not controlling here and that, as a result, the failure to suppress the blood-alcohol test did not violate Slageter's rights under R.C. 4511.191.
In light of our discussion surrounding the physician-patient exception, we further conclude that R.C. 2317.02(B)(1)(b) is applicable because Slageter's blood-alcohol test result was relevant to his criminal offense.[12] The evidence adduced at the suppression hearing suggested that the blood-alcohol test was taken at the direction of medical personnel at the attending hospital. The result was in the possession of the attending hospital. And the sheriff's department requested his medical records several days after the accident in full compliance with R.C. 2317.02(B)(2)(a). As a result, we hold that the trial court did not err in refusing to suppress Slageter's blood-alcohol test, and we overrule his sole assignment of error. The judgment of the trial court is affirmed.
Judgment affirmed.
 Gorman, P.J., Sundermann, and Winkler, JJ.
 Please Note:
The court has placed of record its own entry in this case on the date of the release of this Decision.
[1] Proceedings on the (A)(1) charge were stayed pending Slageter's appeal of the conviction under R.C. 4511.19(A)(2).
[2] At the sentencing hearing, Slageter also entered a no-contest plea and was sentenced in another DUI case unrelated to this appeal.
[3] See State v. Mills (1992), 62 Ohio St.3d 357, 366,582 N.E.2d 972, 982.
[4] See State v. Warren (1998), 129 Ohio App.3d 598, 601,718 N.E.2d 936, 938-939, appeal not allowed (1998), 84 Ohio St.3d 1446,703 N.E.2d 326.
[5] See, e.g., State v. Tu (1984), 17 Ohio App.3d 159,478 N.E.2d 830; State v. Dress (1982), 10 Ohio App.3d 258, 461 N.E.2d 1312.
[6] (1990), 50 Ohio St.3d 222, 553 N.E.2d 672.
[7] See R.C. 2317.02(B)(1)(b).
[8] See Am.S.B. No. 121, 145 Ohio Laws, Part I, 1095.
[9] This section has subsequently been amended.
[10] See R.C. 4511.191(A); State v. Rice (1998), 129 Ohio App.3d 91,717 N.E.2d 351.
[11] See R.C. 4511.191(B).
[12] Accord Middletown v. Newton (1998), 125 Ohio App.3d 540,708 N.E.2d 1086.