Cook, J.,
concurring. I concur in the majority’s affirmance of the conviction and death sentence. I disagree, however, with the resolution of Jones’s first proposition of law, in which Jones argues that his trial lawyers performed ineffectively in failing to object to Dr. McDonough’s testimony on grounds of physician-patient privilege. See R.C. 2317.02(B). The majority finds no ineffective assistance because the trial court “would have been required to overrule” any objection to Dr. McDonough’s testimony. This conclusion stems from the belief that Dr. McDonough could have disclosed Jones’s injury to the authorities under R.C. 2921.22(B), thereby resulting in the loss of any evidentiary privilege. I cannot join in the majority’s analysis because I view it as misapplying the reporting and privilege statutes.
R.C. 2317.02(B)(1) states that a physician shall not testify “concerning a communication made to the physician * * * by a patient in that relation or the physician’s * * * advice to a patient.” In turn, “communication” is broadly defined to include “acquiring, recording, or transmitting any information, in any manner, concerning any facts, opinions, or statements necessary to enable a physician * * * to diagnose, treat, prescribe, or act for a patient.” R.C. 2317.02(B)(4)(a). Thus, the privilege covers a patient’s mere exhibition of an injury to his physician as well as any oral or written communications between patient and physician. Baker v. Indus. Comm. (1939), 135 Ohio St. 491, 14 O.O. 392, 21 N.E.2d 593, paragraph one of the syllabus. A physician-patient “communication” also includes records, charts, laboratory results, and the physician’s diagnosis. R.C. 2317.02(B)(4)(a); see, also, State v. Webb (1994), 70 Ohio St.3d 325, 834, 638 N.E.2d 1023, 1032. This broad definition of the “communication” covered by the physician-patient privilege encompasses much of the evidence and testimony elicited from Dr. McDonough. The testimony and evidence. about Jones suffering a hand injury, the diagnosis of it, the surgery performed, and the laboratory results concerning the eikenella corrodens organism were all protected by the privilege.
The majority decides that R.C. 2921.22(B) provides a statutory exception to the physician-patient privilege and that the evidence and testimony obtained from Dr. McDonough were therefore admissible. R.C. 2921.22(B) imposes a duty upon physicians “to report to law enforcement authorities any gunshot or stab wound treated or observed by the physician * * * or any serious physical harm to persons that the physician * * * knows or has reasonable cause to believe resulted from an offense of violence.” Because Dr. McDonough suspected that fist-to-mouth contact caused Jones’s hand injury, the majority determines that *425 R.C. 2921.22(B) applies even though Dr. McDonough did not actually report the injury to law enforcement authorities.[1]
In support of its conclusion, the majority relies on State v. Antill (1964), 176 Ohio St. 61, 26 O.O.2d 366, 197 N.E.2d 548, which interpreted the predecessor statute to R.C. 2921.22(B) as permitting physician testimony without violating the physician-patient privilege. In Antill, this court explained that the purpose of the physician-patient privilege is to encourage patients to disclose fully all their symptoms to their physicians “without fear that such matters will later become public.” Antill, supra, 176 Ohio St. at 64-65, 26 O.O.2d at 368,197 N.E.2d at 551. The court noted, however, that this purpose has already been undermined when a physician performs the statutory duty to disclose treatment of a person injured by a deadly weapon. Id. at 65, 26 O.O.2d at 368, 197 N.E.2d at 552. Because the main purpose of the privilege had already been compromised, “[t]he only purpose that sustaining the privilege can now serve is to obstruct the course of justice.” Id. The court thus found no reason to recognize the privilege as a basis for excluding a physician’s testimony at trial.
The majority applies the Antill reasoning to this case despite the fact that Dr. McDonough did not report Jones’s injury to police under R.C. 2921.22(B). But Antill’s reasoning suggests only that the physician-patient privilege is lost when there has been an actual report pursuant to the physician’s statutory duty. Indeed, the Antill court emphasized that “[t]he publicity against which the privilege is supposed to protect has already taken place” because the details of the wound “must have been reported by the physician to a law-enforcement officer.” (Emphasis added.) Antill, 176 Ohio St. at 65, 26 O.O.2d at 368, 197 N.E.2d at 552. In this case, however, because Dr. McDonough did not report Jones’s injury, no “publicity” of it had yet taken place. The majority’s reasoning therefore extends the Antill rationale to a situation where the purpose of the privilege could have been, but was not actually, compromised by disclosure.
Even assuming that the majority’s extension of Antill is a logical one, Antill is itself flawed and deserves reconsideration. The Antill court basically concluded that the duty to disclose under R.C. 2921.22’s predecessor created an exception to the physician-patient privilege in R.C. 2317.02. This view is unsupported by either the disclosure statute or the privilege statute. R.C. 2317.02(B) provides a *426 testimonial privilege that allows a patient to prevent his or her doctor from testifying on certain matters arising out of the physician-patient relationship. It is subject to numerous built-in exceptions, none of which is applicable here. See R.C. 2317.02(B)(1)(a) to (c). In contrast, R.C. 2921.22(B) commands a doctor to report patient information to law enforcement that would otherwise be confidential. The disclosure statute does not, however, command the doctor to testify about those matters in court. The extension of R.C. 2921.22(B)’s reporting duty into an exception to the R.C. 2317.02(B) privilege mistakenly blurs the distinction between the duty of confidentiality, which the duty of disclosure supersedes, and an evidentiary privilege, which is unaffected by disclosure.[2]
What the Antill court created, and what the majority endorses today, is an additional exception to the testimonial privilege (based on the public interest in detecting crime) that the General Assembly has not specifically provided by statute. But the General Assembly does not need judicial assistance in this regard. Significantly, it has recognized exceptions to the physician-patient privilege in situations involving a duty to disclose. For example, R.C. 2921.22(E)(5) expressly states that “the physician-patient relationship is not a ground for excluding evidence regarding a person’s burn injury or the cause of the burn injury in any judicial proceeding” arising from the duty to report burn injuries under R.C. 2921.22(E). Similarly, R.C. 2921.22(F)(2) also states that “information regarding the report” of domestic violence under R.C. 2921.22(F)(1) is admissible and shall not be excluded by the physician-patient privilege. Thus, the legislature apparently recognizes that a duty to disclose does not necessarily destroy the physician-patient testimonial privilege. Other states have likewise recognized the distinction between a reporting duty and an evidentiary privilege, enacting statutes or evidentiary rules that exempt information and testimony (such as that given by Dr. McDonough in this case) from the physician-patient privilege. See, e.g., Kan.Stat.Ann. 60-427(e) (no privilege for information re *427 quired to be reported by physician or patient); VtR.Evid. 503(d)(6) (no privilege extends to medical conditions required to be reported by statute); Alaska R.Evid. 504(d)(5) (no privilege applies to information that physician, psychotherapist, or patient is required to report) and 504(d)(7) (no physician-patient privilege applies in a criminal proceeding); West’s Ann.Cal.Evid.Code 994 and 998 (no physician-patient privilege in a criminal proceeding). While I do not necessarily disagree with the Antill court’s balancing of the physician-patient privilege with the public. interest in criminal justice, the Constitution commits that balancing to the General Assembly and not to this court. See State v. Smorgala (1990), 50 Ohio St.3d 222, 223-224, 553 N.E.2d 672, 674-675. Accordingly, I would hold that R.C. 2921.22(B) is not a statutory exception to the physician-patient privilege in R.C. 2317.02(B).
I therefore disagree with the majority that the trial court would have been required to overrule an objection to Dr. McDonough’s testimony based on physician-patient privilege. I also believe that Jones’s trial counsel performed deficiently in failing to raise this objection. By failing to object, Jones’s trial counsel in effect waived the privilege and allowed Dr. McDonough to offer a link in the state’s circumstantial case. Dr. McDonough’s testimony about the presence of the eikenella corrodens organism in Jones’s hand wound corroborated the prosecution’s theory of a fist-to-mouth injury. This testimony and the medical evidence along with it tied Jones to the fatal blows inflicted upon Nathan.
Nevertheless, I do not believe that, but for the deficient performance by trial counsel in failing to raise the physician-patient privilege, there is a reasonable probability that Jones would have been acquitted. Even if Jones’s trial counsel had raised the objection, they would not have been successful in completely barring Dr. McDonough from testifying. Dr. McDonough’s testimony that he treated Jones was not privileged. See Jenkins v. Metro. Life Ins. Co. (1961), 171 Ohio St. 557, 562, 15 O.O.2d 14, 17, 173 N.E.2d 122, 125 (physician-patient privilege does not bar testimony regarding the fact of professional consultation by a person on a certain date). This fact of consultation, coupled with the police’s discovery from hotel employees that Jones had injured his hand on the morning of Nathan’s murder, provided circumstantial evidence of Jones’s identity as the killer. Further, there was evidence that Nathan’s wounds were inflicted by objects consistent with door chains found in Jones’s car and a walkie-talkie that Jones used while working at the hotel. Another key component of the state’s case was that Nathan’s missing pendant was discovered in Jones’s car. Given all of the evidence against Jones, I cannot conclude that exclusion of Dr. McDonough’s testimony about Jones’s injury would have led to a different trial outcome. I would 'therefore reject the appellant’s first proposition of law on that basis. *428 While expressing these reservations, I concur in the judgment of the majority.
Moyer, C.J., and Pfeifer, J., concur in the foregoing concurring opinion.

. The threshold requirement for triggering R.C. 2921.22(B)’s reporting duty is the physician’s observation of any gunshot wound, stab wound, or serious physical harm that the physician knows or believes to have resulted from an offense of violence. As Jones had no gunshot or stab wounds, the only remaining predicate for claiming a duty to report on the part of Dr. McDonough is serious physical harm. Dr. McDonough arguably treated Jones for “serious physical harm” within the statutory definition of that term; Jones was hospitalized and underwent surgery for his hand injury. See R.C. 2901.01(A)(5)(a) and (c).

. The majority cites the Legislative Service Commission’s Commentary to Am.Sub.H.B. No. 511 (which enacted R.C. 2921.22[B]) to support its conclusion that the disclosure statute codifies an exception to the physician-patient testimonial privilege. The majority emphasizes the commission’s comment that “[t]he reporting requirement under this part of the section is absolute, i.e., no privilege attaches in the cases covered.”
While at first glance the phrase “no privilege attaches” seems compelling, it becomes increasingly less so when examined in context. Indeed, the phrase comes at the end of a sentence describing the nature of the reporting requirement. The commission’s comment makes clear that no privilege applies when a doctor is required to report to law enforcement under R.C. 2921.22(B). In other words, there is no “privilege” to prevent a doctor from making the report required by R.C. 2921.22(B). Whether the testimonial privilege of R.C. 2317.02(B) remains, however, is an entirely different matter. The majority’s view to the contrary inappropriately elevates the commission’s comment from an explanation of R.C. 2921.22(B) to a codified exception to R.C. 2317.02(B). And no such exception appears in the statutory language.